BRIGHT *et al. v.* STATE.

(*Knoxville,* September Term, 1949.)

(May Session, 1950)

Opinion filed July 15, 1950.

ACUFF & ACUFF, of Knoxville, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Defendants Charles Bright and Silas Walker appeal from conviction of murder in the first degree and sentence to imprisonment for 99 years in the penitentiary.

Except for the testimony of one eyewitness, the State's case is based on circumstantial evidence, and the defense is an alibi.

Ralph Mason, who was murdered, operated a small store on the Ball Play Road some 7 miles east of Madisonville, in Monroe County. A few minutes after 6 p. m., July 1, 1949, Mason drove his car to the home of a neighbor, Erskin Hensley, and there collapsed. He was in a semiconscious condition and unable to give any account of what had occurred or who his assailants had been. He had been brutally beaten on the head, was covered with blood, and was taken to a hospital in Sweetwater, where he died 5 days later without regaining consciousness. Mills, for the State, testified that in one conversation he had had with Mason, the latter had mentioned the defendant Bright and a boy named Sloan as having been at his store, but did not specify the time or accuse either of them of beating him.

The State's eyewitness was Lloyd Harris, a ten-year-old boy, who testified that he lived near Mason's store; that at about 5:45 p.m., July 1, he had been sent by his mother to buy kerosene and matches at the store; that as he approached the store he saw defendant Walker, whom he knew, sitting in a parked car at a point on the road where he could not be seen from the store on account of an intervening barn; that when he neared the store he saw defendant Bright and Mason on the store porch, and that Bright was beating Mason over the head with what the boy took to be a pistol; that Mason was knocked to his knees and crawled into the store;

that Bright ran around the store through the shed of the barn in the direction of the spot where the boy had seen Walker in the parked car; that Bright fired his pistol three times into the air, and that the boy immediately thereafter heard a motor start and a car door slam. The boy further testified that he immediately told his mother what he had seen and heard.

As Mason was being taken to the hospital, law officers at Madisonville were alerted, and when the Sheriff reached the scene, he secured the names of Bright and Walker from the boy, Lloyd Harris, but did not then wait to interview him as to the details of what he had seen. Returning to Madisonville, the Sheriff notified the Sheriffs of surrounding counties, and as a result, the defendants were arrested about 10:00 p. m. that night in the car in Maryville. The record is not clear as to how careful a search was made of Bright on his arrest, but Walker was not searched because he complained of a sore back. When the prisoners reached the jail, a 45 caliber automatic pistol was found on the seat of the officers' car, where the two men had been sitting, and Walker stated to the jailer Mills, that the pistol belonged to his brother but that he had loaned it to Bright. In later conversations with Mills, Walker admitted that he had been in the neighborhood of Mason's store and there let Bright out of his car. He first said he did not know what Bright had been doing when he was away from the car, and later said that Bright had gone to get a pint of whisky which had been concealed in the old barn. As to the pistol, the officers testified that the weapon showed traces of recent washing which had failed to remove all traces of stains which looked like blood.

It was in evidence that Bright owned the car which, at the time, was being repaired; that the repairs had cost $98, and that Bright did not have money enough to secure the release of the car from the mechanic; that he had tried unsuccessfully, to borrow $15.00 in Madisonville on the morning of July 1; that he was in the Navy at the time, and had overstayed his leave. Mason's brother testified that the evening before he was assaulted, that he (the brother) had helped Mason count his money at the store, and that Mason then had $140 in a billfold on his person. After their arrest, when the defendants were searched, about $50 was found in the pockets of Walker, and about $70 in the pockets of Bright.

As stated, the defense is an alibi, by which defendants and their witnesses testified that defendants left the Ball Play community about 3:30 or 4:00 o'clock in the afternoon; that at the time of the murder they were in Knoxville at the store of Bright's brother, where Walker had brought defendant Bright to secure $100 to pay for the repairs on Bright's car. A promissory note from Bright to his brother, dated July 1, 1949, was introduced to substantiate the story, and the jury had the note, as well as evidence of the fact that it was written with several different pens in several colors of ink, for their consideration. Defendant Bright testified that he gave $50 of the $100 to Walker to keep for him; that he and Walker visited several beer joints in Knoxville, and that they had supper immediately before their arrest at a restaurant in Maryville, but he made no attempt to reconcile the fact that he borrowed only $100 from his brother; that he had paid for beer and food and had tried to borrow $15 on the morning of the crime. The jury, no

doubt, considered the evidence that Mason had approximately $140 when he was attacked and the defendants $120 when they were arrested. A number of other witnesses testified for the defendants that about 6:00 p. m., they had been in Bright's brother's store in Knoxville. Without exception, these witnesses failed to give any satisfactory reason why the evening of July 1 was memorable to them as distinguished from any other evening.

For the State, Mills testified that he had had a telephone conversation with Bright's brother on the evening of July 1, and that in that conversation Bright's brother had told him that he had not seen the defendant Bright for some two weeks.

In addition to the evidence for the State which we have related, the State both in chief and rebuttal, introduced a number of witnesses who testified to seeing the defendants together in the Ball Play neighborhood several hours after 3:30 p. m., when they testified they had gone to Knoxville. These witnesses had the evening of July 1 fixed in their minds by the news of Mason's brutal beating, which was noised abroad in the small community. In addition to Erskin Hensley and Lloyd Harris, Joyce Hensley and Marcene Mullins, two young ladies who knew the defendant Walker and the Walker car, testified that they saw Walker in the parked car after 5:30 p. m., near Mason's store. Beatrice Hensley, who ran a store about two miles from Mason's, testified that both defendants were in her store and left between 5:20 and 5:30 p. m. A. C. Colley, a bread salesman, corroborated this with exactness. He testified that he left Mason in his store at about 5:15 p. m.; that Mason was then in good shape; that it took him 5 minutes to get to the

Hensley store, and that defendants were both there when he arrived, and when he left some ten minutes later.

This case has been tried twice in the Criminal Court of Monroe County. The first prosecution resulted in a mistrial, and as a result, bearing in mind the large number of witnesses for both sides, there were discrepancies in minor details between the testimony at the first and second trials. However, the fact that the prosecution failed in its first attempt, and that feeling in the small community had had time to cool, rebuts any idea that the defendants were the victims of prejudice or hysteria.

There are a number of assignments of error which we find it unnecessary to consider seriatim. The gist of them is that the evidence was insufficient to support the conviction, and that the evidence preponderates in favor of the innocence of the defendants. The asserted alibi of the defendants was a matter of evidence, *Odeneal* v. *State,* 128 Tenn. 60, 64, 157 S. W. 419, to be weighed by the jury like the rest of the evidence. An alibi, being a defense easily fabricated, is to be considered with caution and scrutinized with care. *Odeneal* v. *State,* supra; *Warren* v. *State,* 178 Tenn. 157, 156 S. W. (2d) 416. The evidence in the present record presented this situation: The State introduced a number of witnesses who clearly testified that they knew the defendants and had seen them at and near the scene of the crime when it was known to have been committed. On the other hand the defendants testified, and introduced a number of witnesses who supported them in their testimony, that at that time the defendants were in Knoxville. This was an issue of fact to be determined by the credibility of the several witnesses and the weight to be given their testimony. The issue was resolved for the State

by the verdict of the jury. *Christian* v. *State,* 184 Tenn. 163, 197 S. W. (2d) 797; *Colbaugh* v. *State,* Tenn. Sup., 216 S. W. (2d) 741; *Stinson* v. *State,* 181 Tenn. 172, 180 S. W. (2d) 883; *Turner* v. *State,* Tenn. Sup., 219 S. W. (2d) 188.

 It is assigned as error that the Trial Judge refused to direct a verdict at the end of the State's proof. This Court has never approved the practice of directing verdicts in criminal cases. *Knowling* v. *State,* 176 Tenn. 56, 58, 138 S. W. (2d) 416.

 It is next assigned as error that the Trial Judge made inadequate examination of the boy, Lloyd Harris, before allowing him to testify. Bearing in mind that the boy had testified on the first trial, after an examination which is not in the present record, and that at the time of the second trial, he was older and more mature, we cannot find any indication of any abuse of discretion by the Trial Judge, whose exclusive province it was to determine the capacity of the witness tendered, and in the absence of timely objection (the defendants made no objection in the present record), adequate examination and capacity to testify will be presumed. *Logston* v. *State,* 50 Tenn. 414; *Burke* v. *Ellis,* 105 Tenn. 702, 58 S. W. 855.

 It is assigned as error that the Trial Judge refused to permit the transcript of a part of the testimony of Lloyd Harris at the first trial to be introduced on the second. The transcript of his entire testimony was not tendered and was not available, according to the testimony of the Court Reporter. Clearly, the Trial Judge was correct in refusing to permit the introduction by the defendants of only such parts of the former testimony as were favorable to their side.

The next assignment of error that merits special mention is based on the refusal of the Trial Judge to permit defendants' counsel in the course of his argument, to read certain law to the jury. This is what occurred:

"Now, I just must hurry, let me read you just a little law here what the alibi says and then I am,—

"General Witt: Your Honor, I object to his reading that law to the jury.

"The Court: Yes, it is my rule for counsel not to read any law, Mr. Acuff.

"Mr. Acuff: I think, your Honor please, in a murder case we have a right to read what the Supreme Court has said about an alibi in order to enlighten,—

"The Court: That is an iron-clad rule.

"Mr. Acuff: You refuse to let me do that?

"The Court: Yes.

"Mr. Acuff: I want to enter an exception, may it please the Court.

"The Court: You may."

It will be noted that counsel did not bring·to the attention of the Court the case or the rule of law which he wished to read, and also that the Judge then reminded counsel that "the Court will charge the law." In the charge, the law as it relates to the evidence of an alibi, was fully and fairly given the jury. The defendants' counsel tendered no special request. This constituted a waiver of the exception under the special facts of this record, and if counsel, after hearing the Judge's charge, had found that the Judge had omitted the law he had desired to read to the jury, it was necessary for him to preserve his exception by tendering a special request. Compare *Shelton* v. *Martin,* 180 Tenn. 454, 459, 176 S. W. (2d) 247; *Smith* v. *State,* 159 Tenn. 674, 677, 688, 21 S. W. (2d) 400.

In our view, under the peculiar facts of this case, it is unnecessary to invoke the rule of practice discussed in the State's brief, and laid down in the following cases which hold in accord with general law, that it is within the sound discretion of the Trial Court to permit or to refuse to permit the reading of law to the jury by counsel; *Smithson* v. *State,* 127 Tenn. 357, 155 S. W. 133; *Davis* v. *State,* 161 Tenn. 23, 28 S. W. (2d) 993. Compare note, 77 A. L. R. 659. However, application of that rule would warrant overruling the assignment of error.

 The testimony of Lloyd Harris, with the many other incriminating circumstances, clearly establishes the guilt of both defendants, and the fact that Bright alone struck Mason, does not reduce the grade of Walker's crime, since under Code Section 10760, he was guilty as a principal:

"One who keeps guard while others act, thus assisting them, is, in the eye of the law, present and responsible, as if actually present. And a person combining with others for the purpose of killing a certain person, who was near enough at the time of the killing to give aid and assistance should an attempt be made to rescue the person sought to be killed, is a principal in the killing, though he was upon the opposite side of a river from the place of the killing and in a different state. Nor is presence during the whole of the transaction necessary. And an active participant in the common design, who was doing his part at the time for its furtherance, is a principal though he was not present when the homicide was committed." Wharton on Homicide, 3d Ed., pp. 58-59.

All assignments of errors are overruled and the judgment is affirmed.

All concur.