# HANNAH STRICKLAND SWINDOLL et al. v. HENRY JONES, Executor.—292 S. W. (2d) 531.

Eastern Section. December 7, 1954.

Rehearing denied March 15, 1955.

Petition for Certiorari denied by Supreme Court October 7, 1955.

John S. Wrinkle, Chattanooga, for plaintiffs in error.

George Westerberg, Cleveland, for defendant in error.

AVERY, J. This case comes to this Court from the Circuit Court of Bradley County, Tennessee, and involves the validity of the will of James I. Thatch.

The paper writing, purporting to be his will, in its original form is filed with the record, consisting of two sheets of paper, the first sheet of which is R. 262 and the second sheet has no record number on it. It is typewritten, except the date, the signature of the testator and the signature of the witnesses, which are all in longhand ink. It is dated the 5th day of November 1948, the signature of the testator showing that he was very nervous is practically illegible, except the given name, "James." It is witnessed by three witnesses, Mrs. Jewell Allen, Earl Simbro and Herman Allen. One Henry Jones to whom one half of the property of testator is devised, is named executor of the will, made testamentary trustee for one

Marvin Strickland, a minor, and is expressly excused from making bond either as executor or as trustee for the minor, a grandchild of testator.

Mr. Thatch died March 24, 1950. This paper writing was probated, in solemn form, in the County Court of Bradley County, on the 1st day of May 1950. It was admitted to probate upon the testimony of Jewell Allen and Herman Allen, two of the subscribing witnesses, and Henry Jones was appointed executor and testamentary trustee without bond. (R. 1)

On January 20, 1951, a contesting petition was filed in the County Court of Bradley County by Hannah Strickland Swindoll and James Marvin Strickland, appearing by his next friend and sister, the said Hannah Strickland Swindoll, by which petition the contestants who were the only two grandchildren and only heirs at law surviving James I. Thatch, allege that:

(1) Deceased did not sign the instrument nor direct anyone else to sign his name to it.

(2) That deceased was 82 years of age, had suffered a serious stroke, was confined to his bed, enfeeble in body and mind and incapable to make a valid will, and

(3) That if deceased did sign and publish said paper writing that he did so by reason of fraud, duress and undue influence of Henry Jones, who "standing in the close and confidential relation to the deceased, and the said Henry Jones taking one half (½) of said estate absolutely and becoming Executor of the estate and trustee for the petitioner James Marvin Strickland."

The prayer to the petition is in the usual form, prayed that the fact of contest with will be certified to the Circuit Court of Bradley County to the end that its validity might be tried.

Response to the petition was filed, denying all the material allegations but admitting that James I. Thatch died on March 24, 1950 and that he was physically infirm, advanced in years, had suffered a stroke, but averred that he was mentally alert.

Following the required statutory procedure and after the execution of bonds, the transcript of the record of said County Court was certified to the said Circuit Court, the declaration and plea thereto was properly filed, and the case tried to a jury on the 10th day of September, 1952. The jury found in favor of the plaintiff and the validity of the will. The Trial Judge approved the verdict and entered judgment thereon.

Motion for a new trial was seasonably filed setting out many grounds. The trial court overruled the motion and contestants perfected their appeal to this Court and have assigned errors.

The first, second, third and seventh Assignments of Error are all leveled at the alleged error of the trial court in holding that the motion of contestants, made at the conclusion of all the testimony for a directed verdict against the will because not proven as required by law, and particularly 8102 of the Supplement to the Code of Tenn., in that the will was signed by three witnesses, each and all of whom were available and to be found, and only two of them, Jewell Allen and Earl Simbro were produced as testifying witnesses and that there was no proof

to support the verdict of the jury in favor of the validity of the will or judgment of the court thereon.

The fourth assignment of error is to the effect that the Court erred in failing to charge contestant's special request No. 1, by which contestant sought to have the Court submit to the jury the question of whether Herman Allen, one of the subscribing witnesses, was available and to be found as provided by law.

In the fifth assignment of error the contestants state that it was error for the Court to hold that it was not proper for the contestants to show that Jones, the executor and trustee named in the will, was the confidential and financial advisor of the deceased, at the time of the execution of the will, averring that the law presumed the will to have been executed as result of fraud of Mr. Jones, he having given no explanation of his relationship at the time the proponents concluded their proof, and the Court had permitted the will to be read in evidence.

The sixth assignment of error is leveled at the action of the Court, over the objection of the contestants, in permitting Jewell Allen, the wife of the witness Herman Allen, to testify that her husband "is unable to be here" in proponents effort to prove that he, as a subscribing witness, was not available as required by law, insisting that his avail or non-avail was a fact for the jury to determine rather than the Court.

With respect to the combination of the Assignments of Error first above mentioned, the contestants plant themselves squarely upon the provision of that part of Section 8102 as set out in the Supplement to the Code of Tennessee, which requires all witnesses, if to be found, to testify in cases wherein wills are contested. This section

is a substanital reenactment of the provisions of Sections 8102 and 8108 of the Code of 1932. Code Section 8102 of the Code of 1932 is as follows:

"Written wills with witnesses thereto, when not contested, shall be proved by at least one of the subscribing witnesses, if living. And every last will and testament, written or nuncupative, when contested, shall be proved by all the living witnesses, if to be found, and by such other persons as may be produced to support it."

Section 8108 of the Code of 1932 is as follows:

"Upon the trial of the issue in case of a written will with witnesses, it shall be proved by all the living witnesses, if to be found, and by such other persons as may be produced to support it."

The foregoing two Sections seem to be compiled into one, so far as the effect is concerned, as carried into the Supplement to the Code of Tenn. 1950 and is as follows:

"Written wills with witnesses thereto, when not contested, shall be proved by at least one of the subscribing witnesses, if living. And every last will and testament, written or nuncupative, when contested, shall be proved by all the living witnesses, if to be found, and by such other persons as may be produced to support it."

The proper procedure to be followed in this case, by this Court, in passing upon the Assignment of Errors is to determine the issue raised by Assignment No. 6. The exact objection, as made by counsel for contestants, was to question 22 and the witness' answers, and the

Court action thereon. To exactly understand it, it is necessary to here copy questions 21 and 22, the objection made and the remarks of the Court, all of which are shown at R. 46 as follows:

"Q. 21. Where is Herman Allen today, your husband? A. At home sick.

"Q. He is not able to be here? A. No.

"Mr. Wrinkle: I object to that, that he is not able to be here.

"Court: She said he is sick in bed. He is her husband, his wife should know whether he is sick."

It will be observed that the witness did not say that her husband was "sick in bed." What she actually said according to this record was: That he is "at home sick."

Henry Jones married Herman Allen's sister on July 16, 1949. (R. 54 and 189.)

This VI assignment of error is based upon the VIII ground set out in the amended motion for new trial. R. 31. We think the objection to the testimony should have been sustained for two distinct reasons namely, first, the witness did not say that her husband was "sick and in bed." No such statement appears in her testimony included in the bill of exceptions signed and sealed by the Trial Judge. Secondly, the exact objection was to the question 22 and the answer, as above set out, for when the witness was permitted to say, in effect, "No" to that question she was exercising the prerogative which the court must exercise. She should have stated how he was sick, if she knew. How that sickness had been revealed in his actions, such as whether he was nauseated, or suffering pain as revealed from any symptoms that she

observed, or that his temperature was not normal, and the court was the proper authority to determine whether the witness, Herman Allen, was able to be present. The statement of the Trial Judge indicates that he accepted the judgment of the witness and made that judgment his judgment. It also shows clearly, in the record, that the learned Trial Judge did not understand the exact statement of the witness.

Now this particular assignment of error No. VI is not only leveled at the error in the Trial Court in failing to sustain the objection to the involved testimony, but in this assignment the defendants further say that:

"This was error because it was equivalent to the court's passing on the question of fact as to whether the witness Allen could be found and was available as a witness and that he was not available."

That part of this assignment, together with Assignment No. IV, clearly shows that counsel for contestants was laboring under the erroneous conclusion that whether or not the witness Herman Allen was to be found and available was a question for the jury and not for the court.

It will be observed that immediately following the above stated objection to the testimony, counsel for contestants proceeded to cross-examine this witness, and in making inquiry with respect to the contract between Mr. Jones on one part, and this witness and her husband on the other part, for the care of deceased, she was asked and answered the following questions:

"Q. 73. Did he make the deal with you or your husband? A. Both of us. He is sick.

"Q. 74. What is the matter with him? A. Nervous, in a bad shape.

"Q. 75. Do you know whether or not in 1944 he was adjudged of unsound mind and sent to Knoxville? A. Yes.

"Q. 76. How long was he there? A. Six months.

"Q. 77. Is that what is wrong with him now? A. No. He gets up and about but he can't work.

"Q. 78. You and he run a store? A. Yes.

"Q. 79. How long since he has been in town? A. I would say a couple of months.

"Q. 80. It would be easier for him to come into the courthouse in a car and sit in court? A. Well, I don't know. He can't stand a crowd. He gets so nervous he can't stand it.

"Q. 81. As a matter of fact Mr. Allen has been worried about this thing? A. No.

"Q. 82. Don't you know he doesn't want to come and testify that Mr. Thatch was of sound mind? A. He would be glad to if he was able to.

"Q. 83. When was he last in the store? A. This morning. He is not keeping it today.

"Q. 84. Has he gone to church lately? A. He has not been at church in two years.

"Q. 85. He could come if Mr. Westerburg wanted him? A. No.

"Q. 86. When did you know he wasn't coming? A. All along.

"Q. 87. How long? A. I don't know.

"Q. 88. You know Mr. Allen hasn't wanted to come since about the time this suit was filed? A. No. No. He would be willing to come right now if he was able.

"Q. 89. What makes you think he is not able to come? A. I know his condition." R. 52, 53 and 54.

"Q. 154. Your husband is up and about now? A. Yes.

"Q. 155. He doesn't want to be here today? A. He can't be here today." R. 58.

Cross-examination of this witness ceased with the above question and four or five questions were asked on re-direct examination, but nothing about the condition of Mr. Allen, whereupon the witness was asked.

"Q. 5. Will you file this paper you say Mr. Thatch signed as his will as Exhibit 1 to your testimony? A. I do.

"Mr. Westerburg: I want to read this will into the record.

"Mr. Wrinkle: We object to that.

"Court: What is the basis of the objection?

"Mr. Wrinkle: That the statute requires that all witnesses must be required to appear and give testimony. Mr. Allen is not here.

"Court: Overruled.

"Mr. Wrinkle: We except.

"Court: You may read it."

The record shows the will was then read to the jury by Mr. Westerburg. After reading it the following occurred:

"Court: Let it be marked plaintiff's Exhibit No. 1.

"Mr. Westerburg: The plaintiff rests.

"Mr. Wrinkle: I want to show to the court that Mr. Jones was the financial and confidential advisor of Mr. Thatch, and still has financial and confidential relations with him.

"Court: This is not injected at this state of the lawsuit. The court has permitted the will to be read to the jury, and has admitted the will.

"Mr. Wrinkle: We note an exception." R. 59, 60, 61.

In order that this opinion may reveal all of the evidence that was before the Court and proper for this consideration on the question of the availability of Herman Allen, as a witness, in the course of the introduction of the testimony for the contestants the witness Mrs. Jewell Allen was recalled for further cross-examination and she was asked, without objection:

"Q. 1. What condition was your husband in yesterday afternoon? A. About like he always is.

"Q. 2. Was he in the store? A. Yes.

"Q. 3. How many people were in there between three and six? A. When I first went home he was at the store. I don't know how many.

"Q. 4. What time did you get home? A. Around five.

"Q. 5. Then from that time on how long was he in the store? A. He went to the house in a little while.

"Q. 6. He was there when eight or ten people were in the store? A. Yes, when we first opened the door.

"Q. 7. Isn't it true you and Mr. Jones just don't want him up here to tell the truth about the execution of the will? A. No. As I said yesterday, he would be willing to come. He will talk to you if you go down there."

As before stated, on page 1 of this opinion [292 S. W. (2d) 532] referring to R. 1 it is shown that this same witness, Herman Allen was in court before the Probate Judge and testified at that hearing when the will was admitted to probate in common form. In view of the fact that the basis for the judgment of the court that this witness was not available, is solely the testimony of his wife, to the effect that he was nervous, "He can't stand a crowd. He gets so nervous he can't stand it," notwithstanding the fact that he did appear in court to testify before the Probate Judge, and that coupled with the further fact that the Trial Court did not understand correctly the answer made by the witness when he understood her to say that her husband was at home "sick in bed," indicates that the Trial Court inadvertently abused his discretion in that regard, at the time he overruled contestant's exception to her testimony.

It necessarily follows that our next consideration should be given to assignment of error No. IV leveled

at the refusal of the Trial Court to give contestants' special request number I in charge to the jury. That request is as follows:

"Gentlemen of the jury: Section 8102 of the Supplement to the Code of Tennessee provides: 'And every last will and testament, written or noncupative, when contested, shall be proved by all the living witnesses, if to be found, and by such other persons as may be produced to support it.' I charge you that if the attesting witness, Herman Allen, be living and is to be found and the will is not proved by the witness Herman Allen, it is your duty to find against the will."

The capacity or incapacity as well as the competency or incompetency of a witness to testify is a question for the court and not one for the jury. This is true of children, persons aged and imbecilic and persons of unsound mind. Burke v. Ellis, 105 Tenn. 702, 58 S. W. 855; McCutchen v. Pigue, 51 Tenn. 565; Walker v. Skeene, 40 Tenn. 1; Wright v. Southern Express Co., C. C., 80 F. 85; Fleming v. State, 24 Tenn. 564; Kincaid v. Meadows, 40 Tenn. 188; Ball v. State, 188 Tenn. 255, 219 S. W. (2d) 166; Franks v. State, 187 Tenn. 174, 213 S. W. (2d) 105; Bright v. State, 191 Tenn. 249, 232 S. W. (2d) 53.

We sustain the first part of assignment of error No. VI, directed expressly at question No. 22 and the answer thereto. The court should have sustained that exception. We overrule the latter part of assignment of error No. VI and all of assignment of error No. IV, for the reason that we have heretofore indicated. It was the proper function of the Trial Judge to pass upon and determine

whether the witness Herman Allen was to be found and available, though he may have erred in his determination thereof.

This brings us to the most serious contention of the contestants, and specifically the most serious parts thereof leveled at the failure of the Trial Court to sustain contestants' motion for preemptory instructions made at the conclusion of all the testimony in the case.

"Q. 25. Was anything said about a will? A. Yes. Mr. Carmichael had a will. Mr. Thatch took it, talked awhile then Mr. Carmichael read it.

"Q. 26. Mr. Thatch read it first? A. Yes, I imagine he did. He had it.

"Q. 27. After Mr. Carmichael read the will did he ask if that was the way he wanted it? A. He said that was the way he wanted it? I signed it. I think Mrs. Allen signed it before I did.

"Q. 29. Is that his signature? A. Yes.

"Q. 30. You saw him sign it? A. Yes.

"Q. 31. After he signed it did the other parties sign it? A. Someone said 'The witnesses will sign the will.' I signed it, and then the other one.

"Q. 32. Is this your signature? A. Yes.

"Q. 33. Did you sign it in the presence of Mr. Thatch? A. Yes. All of us signed it in his presence.

"Q. 34. At that time what was the condition of Mr. Thatch's mind? Did he seem to know what he was doing? A. His mind seemed to be all right.

That was the only time I saw him. It was clear then when I went in.'' R. 38.

Cross-examination:

"Q. 14. Did he read it? A. I don't know.

"Q. 15. What kind of glasses did he have? A. I don't know.

"Q. 16. You didn't read the will? A. No. Mr. Carmichael read it.'' R. 39, 40.

Recross-examination:

"Q. 8. You were among strangers and paid little or no attention? A. That's right.

"Q. 9. You say Mr. Carmichael said he wanted you to witness the will? A. Yes. After I got there.

"Q. 10. Did Mr. Thatch say anything to Herman Allen and Jewel Allen that he wanted them to witness anything? A. He said after he signed it he wanted a witness.'' R. 43-44.

The above are extracts from the testimony of Earl Simbro.

The specific motion by Mr. Wrinkle is as follows:

"We move the court to direct the jury to return a verdict against the will based on Sec. 8102 of the Supplemental Code of Tennessee that I just read to Your Honor, that requires all living witnesses to the will to appear and be presented to the jury, as the will cannot be probated in solemn form without that, unless something is shown the witness was not available. No effort was made to bring him before the court.'' R. 232.

104

The court, without any comment whatever, simply said, "Overruled," and Mr. Wrinkle promptly replied, "We except."

There is no necessity to further quote from this record, suffice it to say that as shown by questions and answers 75, 76 and 77, copied into this opinion at page 6 [292 S. W. (2d) 535], Mrs. Allen, in addition to stating that her husband was sick on cross-examination, said that he had been adjudged of unsound mind and sent to Knoxville, in 1944, where he stayed about six months but that this was not what is wrong with him now, and the court either determined that the statute was not mandatory or that this witness was not available. He had not left the state. He lived in the county where the case was being tried. His home was close enough to the courthouse wherein the trial was held to permit Mrs. Allen to go back and forth at the close of the day's hearings and return the next morning, for she testified, on recall for further cross-examination, that they operated a store and that he was in the store the first evening after she had testified during the day, that he was up and about and not confined to his bed. Was in the store with seven or eight people on the first day of the trial, and from her testimony it is clear that insofar as his physical condition was concerned there was nothing to have prevented his presence, as a witness in this case, and there is nothing in the record to show that he was incapacitated to testify in the case. It is said in the brief of proponents of the will, defendants in error in this court, at page 13:

"When proponent summoned Herman Allen as a witness, and it appeared Allen had been adjudicated as incompetent and too nervous and unable to appear

as a witness and refused to come, the proponent had done all he could to make the witness available.''

In the first place, it is not shown in this record that Herman Allen was ever subpoenaed or summoned to appear and testify as a witness, but it is shown that he did appear and testify as a witness in the common form probate of the will. Proponents have cited several cases, including Crockett v. Crockett, 19 Tenn. 95; Jones v. Arterburn, 30 Tenn. 97; Rose v. Allen, 41 Tenn. 23; Maxwell v. Hill, 89 Tenn. 584, 587, 15 S. W. 253; Terry v. Webb, 159 Tenn. 642, 644, 21 S. W. (2d) 622; Warren v. Warren, 11 Tenn. App. 338, 341; Weaver v. Hughes, 26 Tenn. App. 436, 173 S. W. (2d) 159, 162; Parker v. West, Tenn. App. 199 S. W. (2d) 928, 929 and Pritchard on Wills, Sec. 332, page 378.

In each and all of the cases above cited the witnesses in question and not produced were either dead, moved out of the state, incompetent as provided by statutory provision, such as being a devisee, or where summons had been issued, placed in the hands of the sheriff and returned showing that the witness was not to be found. We do not think any of the cases relied upon constitute authority upon which the contention of the proponents can be sustained in the instant case. If we are to determine that a person once committed to an insane institution, without showing a legal restoration, is incompetent as a witness our authority would have to be the case of Jackson v. Van Dresser, 188 Tenn. 384, 219 S. W. (2d) 896, which has determined that the contracts of a person so committed are void until and unless he is legally restored, and we do not believe that the Jackson case has gone far enough to constitute authority to the effect that a person once mentally declared insane is

forever thereafter incompetent as a witness, unless there is a legal restoration.

It is true that there is a single sentence in Sec. 332, page 378 of Sizer's Pritchard on Wills that says: "Proof of insanity of a witness will excuse his non-production," citing in footnote the English case of Bernett v. Taylor, 9 Ves. 382. That statement is made in a footnote in the case of Crockett v. Crockett, 19 Tenn. 95, but, in the case of Wright v. Southern Express Co., tried in the Western Division of the Federal Court in Tennessee and reported in 80 F. 85, 87 that:

"Where one who has been adjudged to be insane is offered as a witness, the inquiry for the court on the preliminary examination is limited to his understanding of the obligations of an oath and ability to comprehend the examination as a witness, and, if he can stand this test, the effect of his alleged insanity upon his credibility is for the jury."

It does not appear in this record that the Trial Court determined the unavailability of the witness Herman Allen to be that of insanity or as heretofore indicated in this opinion that he was sick at home, or both. In the same section of Sizer's Pritchard on Wills above referred to, wherein it is said that, in accord with the cases cited when a witness is a non-resident of the state, or insane, he is not available, it is also said:

"But the absence of a subscribing witness beyond the jurisdiction at the time of the probate, for a temporary purpose, if his return within a limited time is reasonably certain it is not sufficient to excuse his non-production. It is not, however, an inflexible rule that a change of residence is necessary to excuse

the non-production of a witness or warrant the admission of secondary evidence.''

It is clear from this record that the witness Herman Allen was physically available and could have been produced, at the hearing, even after the exception was made to the testimony of his wife, in open Court.

It has been held in many cases, which it is unnecessary to cite in this opinion, that the competency of the testimony of a child is to be determined by the court, and in the case of Franks v. State, 187 Tenn. 174, 213 S. W. (2d) 105, it was held that the testimony of a seven-year-old child was competent. In the case of Bright v. State, 191 Tenn. 249, 232 S. W. (2d) 53, it was held that the testimony of a ten-year-old child was competent, and the Supreme Court in each of the cases sustained the Trial Judge in admitting the testimony.

The will in the case now before us was executed under circumstances which are very unusual. Herman Allen and his wife were closely related to the chief beneficiary or devisee under the will who is also named executor, without bond, and made testamentary trustee for a minor grandchild of the testator. The attorney who drafted the will had never discussed the will with the testator. He did not attend the execution of the will. He drafted the will from information given by a relative of the alleged testator, who was a close friend of the chief devisee and the executor. The testator was more than 80 years of age, had been taken from the hospital directly to the home of Herman Allen and his wife, was confined to his bed in their home when the will was executed, and the evidence by the two subscribing witnesses, even with the proper attesting or witnessing clause shown above the

signatures of the witnesses, does not indicate that this attesting clause was ever read in the presence of the testator or the witnesses, Herman Allen and his wife, at the time of the execution of the will, by the contract with Henry Jones, the devisee, executor and testamentary trustee, was being paid $100 a month to take care of Mr. Thatch, who was never able to be up after being carried to the Allen home.

We are familiar with the rule laid down in Beadles v. Alexander, 68 Tenn. 604 and referred to in the opinion in the case of Parker v. West, 199 S. W. (2d) 928, to the effect that proof of the signature of the testator and of the signature of the attesting witnesses, nothing else appearing, raises a presumption that the witnesses signed according to the provisions of the attestation clause preceding the signature. In the case of Parker v. West the attesting witnesses were dead and the question arose over the proof of their signatures. The will was sustained. Of course the witnesses could not be produced if dead.

Contestants have relied upon the recent case of Lawrence v. Lawrence, 35 Tenn. App. 648, 250 S. W. (2d) 781, to support their contention that the will was not executed in accord with the provisions of Chapter 125, sec. 4 of the Acts of 1941, Sections 8098.1-8098.8, 1950 Code Supplement, which deals strictly with the legal execution of a will. In our view of the case we cannot, nor is it necessary at this time, determine whether the will was legally executed as required by law.

We think it very clear that the legislature, by Chapter 23, sec. 1 of the Acts of 1879, carried into the Code of 1932 as Sections 8102 and 8108, the identical legal pro-

visions, with respect to probate of wills when contested, and further reinforced and reenacted as a part of Section 8102 in the Supplement to the Code of Tennessee 1950, has fixed the law as an established legislative policy, requiring all witnesses to a will, such as we have before us, when contested, to be produced and their testimony received, and we think the better practice is for the Trial Court when it appears that a witness is physically available within the jurisdiction of the court, to hear that witness testify, or at least have his testimony in the record by deposition, and it is not shown in the instant case that the deposition of Herman Allen could not have been taken by consent or by order of the court nor to our satisfaction that he was ''not found.''

We are of the opinion that, under the circumstances shown by the proof in this record, it was an abuse of the discretion of the Trial Court to hold that Herman Allen was not available as a witness, which he evidently did at the close of proponent's proof in chief and also at the conclusion of all the evidence introduced in the case, and we think to this extent that the assignment of errors dealing with the availability of Herman Allen as a witness will have to be sustained.

We, therefore, hold that: (1) It is mandatory for all attesting witnesses to a will, if they are found, as provided by statute, and available for testimony in accord with our Supreme Court decision, to be produced by proponents in all cases contesting the validity of wills. (2) It is to be determined by the trial court and not by the jury whether such witness or witnesses are to be found and available. (3) This Court will sustain the action of a trial judge in his exercise of such discretion, unless it appears from the record that there has been an

abuse of such discretion. (4) There is no issue to be determined by the jury in will contests until the law with respect to the production of such witnesses has been complied with. (5) A will should not be admitted and read to the jury, as a part of the evidence, until such witnesses who are found and available have been produced in open court, or their testimony taken by deposition. (6) The learned trial judge should not have held from the facts in this case that Herman Allen was "not found" or not available, and (7) in so holding he abused the discretion with which he was vested.

We are not, however, holding that the motion of contestants for peremptory instructions against the will should be sustained, but we are of the opinion that the motion for a new trial should have been granted and upon the theory that Herman Allen was available and should have been introduced in open court, and while we are not satisfied with the proof in this record with respect to the execution of the will, we are constrained by the facts of this case to hold that there should be a new trial, and to sustain, to that extent only, the assignment of error No. I.

The verdict of the jury and the judgment of the court are accordingly set aside, and the cause will be remanded to the Circuit Court of Bradley County, there to be retried in accord with this opinion and the judgment of this Court.

Under all the circumstances prevailing the Court is further of the opinion that the cost of the cause in this Court should be equally divided between the contestants and the proponents.

Judgment will be entered in accord with this opinion. Carney, J. concurs.

Swepston, J., did not participate in the consideration of this opinion having been advanced to the Supreme Court.

On Petition to Rehear.

AVERY, J. The opinion of the Western Division of this Court, in the above styled case, was filed on December 7, 1954, this case having been heard by the Western Division sitting at Knoxville, Tennessee.

On December 17, 1954, the original plaintiffs-in-error filed a motion to rehear, and the only matter called to the attention of this Court by said petitioners not determined, or disposed of by proper order or reference in the original opinion, is that this Court failed to refer to or dispose of a motion filed by plaintiffs-in-error prior to the hearing of this case in this Court, whereby they sought to have this Court enter an order in this case disallowing the cost of the transcript from the court below to the clerk of said court, in the amount of $97.50.

In the motion of plaintiffs-in-error attention is directed to Section 10060 of the Code of Tennessee which requires the clerk of the lower court, when a cause is taken by appeal in the nature of Writ-In-Error, to the Supreme Court or to the Court of Appeals to make out and transmit by mail to the clerk of the appellate court a transcript of the record within 40 days after the entry of the appeal, unless the entry has been made within 40 days of the regular term of the appellate court, or during such term, and in that event the record to be made up and transmitted forthwith, the provisions of which statute are

supplemented by Rule 6 of this Court, and which rule is as follows:

"All transcripts of records from trial courts, upon appeal, or appeals in the nature of a writ-of-error, for this court, shall be made and filed with the clerk of this court for the proper division as soon as possible; and in all cases within 40 days."

The Supreme Court has provided a further remedy to correct such situations as appear in the instant case by adopting Rule 7 of that Court, and which rule is as follows:

"When a clerk of any court shall fail to make out and file with the clerk of this court a transcript of the record in any cause in which an appeal has been perfected to this court, in the time, manner and form prescribed by the foregoing rules and the law, in the absence of good cause for such failure, or shall make and certify an imperfect transcript, or shall include therein papers not required, or papers prohibited by these rules, his fees for the transcript will be disallowed by the clerk of this court, and his entire costs may be disallowed by order in the cause."

The motion for a new trial was heard on January 5, 1953, overruled, appeal prayed and granted. The entry thereof was made nunc pro tunc on January 12, 1953, and 30 days allowed for the filing of a bill of exceptions. R. 33. Contestants were allowed 30 days additional time in which to file their bill of exceptions on January 28, 1953. R. 257. The bill of exceptions is dated February 26, 1953. R. 257.

The cost of the transcript as shown by the Bill of Cost filed by the record is shown on R. page 264, and is $97.50.'' The Clerk of the lower court was W. B. Henson, and his certificate to the correctness of the Bill of Cost is dated September 3, 1953. His certificate to the entire transcript is likewise dated on September 3, 1953. No reason is assigned why the record was not forwarded to the Court of Appeals at Knoxville so as to have reached it long before the 26th day of December, 1953.

However this may be, the motion does not seek to have the entire cost of the Clerk disallowed. It only seeks to have the cost of the transcript disallowed. Such failure of diligence on the part of the Clerk is to be regretted, but this Court evidently for some good reason has not seen proper to adopt a rule similar to the aforesaid Rule 7 of our Supreme Court.

Having remanded this case for a new trial, and having provided for an equal division of the cost of this cause in this Court between the respective parties, and there appearing no malicious act on the part of the Clerk, though seemingly inexcusable, this Court will not grant the motion to strike the Clerk's cost for preparing the transcript. See Lacy v. Rymer, 28 Tenn. App. 180, 187 S. W. (2d) 653-654.

In the contestants' petition to rehear it is again insisted, as was done in the Assignments of Error and Argument thereon, that there is no evidence to support the verdict of the jury in that there is no proof that the testator Thatch ever signified to attesting witnesses that the instrument was his will as required by Section 8098.4 of the Code, construed in the case of Lawrence v. Lawrence, 35 Tenn. App. 648, 250 S. W. (2d) 781, and that

the proof in the instant case does not measure up in the standards as set in the case of Miller v. Thasher, 36 Tenn. App. 88, 251 S. W. (2d) 446.

We said in our original opinion, at page 15 [292 S. W. (2d) 540], that:

"Contestants have relied upon the recent case of Lawrence v. Lawrence, 35 Tenn. App. 648, 250 S. W. (2d) 781 to support their contention that the will was not executed in accord with the provisions of Chapter 125, sec. 4 of the Acts of 1941, Sections 8098.1-8098.8, 1950 Code Supplement which deals strictly with the legal execution of a will. In our view of the case we cannot, nor is it necessary at this time, to determine whether the will was legally executed as required by law."

Had we taken any other position in that particular regard we would have been required to measure the proof in this case by the rules laid down in the case of Miller v. Thrasher, 36 Tenn. App. 88, 251 S. W. (2d) 446, and applied the rules as there stated to the facts of the instant case, under the "Some Material Evidence Rule". This we did not feel called upon to do after holding that there had been an abuse of a judicial discretion and error by the trial court in permitting the will to be read to the jury, as evidence and we stated on page 17 of the brief that:

"While we are not satisfied with the proof in this record with respect to the execution of the Will, we are constrained by the facts of this case to hold that there should be a new trial and to sustain to that extent only the Assignment of Error No. 1."

We are also requested to modify the former opinion with respect to the cost of the cause. We carefully considered the disposition of costs and concluded that based upon this record, and the course taken by each party in the Court below justified an equal division of the cost in this court between the contestants and the proponents. We see no reason to change our former position in that regard.

We think all other questions raised by the petition to rehear have been properly disposed of by our original opinion, and with the explanation herein regarding Rule 6 of this Court and Rule 7 of the Supreme Court the petition to rehear is denied, at the cost of plaintiffs-in-error.

Carney, J., concurs.