NO. 07-03-0309-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 8, 2003



______________________________




WARREN P. CANADY, APPELLANT



V.



TEXAS DEPARTMENT OF CRIMINAL JUSTICE, APPELLEE




_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NO. 088254-00-D; HONORABLE DON EMERSON, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Warren P. Canady, an inmate proceeding pro se, filed a notice of appeal from the
trial court's order dismissing his claim against the Texas Department of Criminal Justice-Institutional Division for injuries he allegedly sustained. Canady timely filed his notice of
appeal on July 7, 2003. By letter dated July 9, this Court notified Canady that no further
action would be taken in this appeal until the $125 filing fee was received and that failure
to pay the fee might result in dismissal under Rule 42.3(c) of the Texas Rules of Appellate
Procedure. (1) In response, on July 25, 2003, he filed an application to proceed in forma
pauperis. For the reasons expressed herein, we dismiss the appeal.

 Pursuant to Rule 20.1(a), a party may proceed without advance payment of costs
if the party files an affidavit of indigence in compliance with the Rules. Rule 20.1(c)
provides that an affidavit of indigence must be filed in the trial court with or before the
notice of appeal, and Rule 20.1(c)(3) further provides that the time in which to file the
affidavit may be extended if, within 15 days after the date the notice of appeal was filed,
the party files a motion for extension of time in compliance with Rule 10.5(b). (Emphasis
added).

 Canady's application to proceed in forma pauperis was not filed in the trial court with
or before the notice of appeal nor was it filed within the 15-day window with a motion for
extension of time. See Mikkilineni v. City of Houston, 4 S.W.3d 298, 299
(Tex.App.-Houston [1st Dist.] 1999, no pet.). Thus, it is ineffective to excuse him from
paying the filing fee. 

 Accordingly, the appeal is dismissed.

 Don H. Reavis

 Justice

1. All references to rules are to the Texas Rules of Appellate Procedure.


t="true" Name="heading 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0031-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

 MAY 11, 2011



 

 



 

 

DENNIS SALZIDO, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 396TH DISTRICT COURT
OF TARRANT COUNTY;

 

NO. 1123446D; HONORABLE GEORGE GALLAGHER, JUDGE



 

 



 

Before QUINN, C.J., and HANCOCK and
PIRTLE, JJ.

 

 

MEMORANDUM OPINION

            Appellant, Dennis
Salzido, was convicted following a jury trial of felony driving while
intoxicated,[1]
enhanced by two prior felony convictions,[2] and was sentenced to
twenty-five years confinement.  In two
points of error, Appellant asserts the trial court erred by denying his motion
to suppress because (1) reasonable suspicion did not exist  for his initial detention and (2) the search
warrant issued for a sample of his blood was not supported by adequate probable
cause.   We affirm. 
 

Background

            On December
3, 2008, a Tarrant County Grand Jury returned an indictment alleging that, on
August 7, 2008, Appellant operated a motor vehicle in a public place while
intoxicated.  The indictment also
contained a felony repetition paragraph for two earlier DWI convictions in February
2005 and June 1997, and a habitual offender notice for two felony convictions
for assault causing bodily injury to a family member in June 2006, and
aggravated robbery causing serious bodily injury in December 1986.

            On May 11, 2009, Appellant filed a
motion to suppress all tangible evidence seized from him and his vehicle on
August 7, 2008, including an open twelve-pack of beer, all statements, and the
results of any analysis of Appellant's breath and/or blood due to an illegal
stop or detention.  On November 16, 2009,
Appellant amended his motion to suppress to further allege that the search warrant
issued for a sample of Appellant's blood was defective.  

            The trial court held a suppression
hearing on December 2.  Corporal Pat
McGrail of the Hurst City Police Department testified that, on August 7, 2008,
he was working an accident on State Highway 10 when he observed Appellant's
pickup drive through an intersection before coming to a complete stop in the
middle of the roadway and obstructing traffic. 
He approached the pickup truck and observed Appellant in the driver's
seat, passed-out with his head slumped back on the headrest.  His right hand was on the steering wheel and
an open can of beer was in his lap.  There
was an open twelve-pack of beer on the passenger-side floorboard.  The pickup was in "Drive,"
Appellant's foot was on the brake and he was unresponsive.  Corporal McGrail reached in the cab, placed
the pickup in "Park" and turned off the ignition.  He detected a moderate to heavy odor of
alcohol coming from Appellant's person and the pickup's interior.  

            After Corporal McGrail gave Appellant
several verbal commands and grabbed his wrist, he awakened.  Appellant appeared disoriented, unsteady, and
slow to respond.  His eyes were bloodshot
and watery while his speech was heavy and slurred.  He was unable to walk without assistance and
he smelled of alcohol.  At that time, Corporal
McGrail believed Appellant to be a danger to himself
and others.

            Officer Miguel Jimenez then
administered field sobriety drills which corroborated Corporal McGrail's
account of Appellant's behavior and physical condition.  Officer Jimenez first administered the
horizontal gaze nystagmus drill and Appellant exhibited six, out of a possible
six, clues.  Due to Appellant's
complaints of a back injury, Officer Jimenez did not perform either the walk
and turn drill or the one-legged stand drill. 
Instead, he administered the nose-touch drill and Appellant was unable
to touch the tip of his nose.  When
Appellant was given the alphabet drill, he was unable to complete the sequence
as instructed and was confused.  Given the
drill results, Appellant's bloodshot eyes, his instability, slurred speech, and
the odor of alcohol coming from his person, when combined with the other
officer's observations, Officer Jimenez determined Appellant was intoxicated
and placed him under arrest for DWI. 
After placing Appellant in custody and learning of his two prior DWI
convictions, the officers requested a blood sample which Appellant
refused.  The officers then decided to
seek a search warrant for a blood specimen. 
  

            Corporal
McGrail prepared the search warrant.  The
warrant recounted the previous events observed by the officers as well as the
results of Officer Jimenez's field sobriety drills.  The warrant was prepared by using, as a
template, a warrant previously issued on June 7, 2008, where the suspected
person was a John A. Hoover.  During the
warrant preparation process, Corporal McGrail inadvertently left some of the
information from the earlier warrant in the text of new warrant.  These errors included leaving the date June
7, 2008 in the first paragraph even though the correct date of August 7, 2008 was
used throughout the remainder of the warrant. 
Also, the name "Hoover" was left remaining in a single
sentence, although Appellant's correct legal name, "Dionisio
Salzido," was utilized throughout the remainder of the warrant.  Further, in several instances where
Appellant's name appeared, it was prefaced by "John" or "John
A."--Hoover's first name and middle initial. 

            Judge Ken Whiteley, Municipal Judge
for the City of Hurst, Texas, testified that he visited with Officer Jimenez at
2:00 a.m. on August 8, 2008, at his house. 
Judge Whiteley discussed the warrant with Officer Jimenez and determined
sufficient probable cause had been established for the warrant to issue.  

            At the hearing's conclusion, the
trial court denied Appellant's motion to suppress.  In so doing, the trial court determined that,
after Corporal McGrail observed Appellant's pickup stopped in the middle of the
roadway, Corporal McGrail had a reasonable suspicion to approach the
pickup.  The trial court found that
Corporal McGrail had a reasonable suspicion to believe Appellant was operating
a motor vehicle in a public place while intoxicated when he observed Appellant unconscious
in the driver's seat, with an open can of beer in his lap, the pickup in
"Drive," his right hand on the steering wheel and his foot on the
brake, coupled with the smell of alcohol on Appellant's person and inside the
pickup.  When this was further confirmed
by Officer Jimenez's field sobriety drill results, he held the officers had
probable cause to arrest Appellant and seek his blood sample.  Despite the technical errors in the warrant,
the trial court ruled that the warrant contained sufficient facts to establish
probable cause that a DWI offense had occurred. 


            Following a two day jury trial, the
jury convicted Appellant of DWI, enhanced. 
Thereafter, the trial court sentenced Appellant to twenty-five years
confinement.

Discussion

            Appellant
asserts that his detention and subsequent investigation were unsupported by any
reasonable suspicion on behalf of the officers because he had committed no traffic
violation and was not driving erratically. 
He asserts the search warrant for his blood sample was defective because
an erroneous date, June 7, 2008, was listed in the warrant's first paragraph
and the name "Hoover" was used once. 
In addition, he contends the warrant was defective because it states
Appellant "was asked to perform standard field sobriety drills" when
he was only asked to perform one standard field sobriety drill, i.e., the
horizontal gaze nystagmus drill. 




Standard of Review

            A trial court's ruling on a motion to
suppress, like any ruling on the admission of evidence, is subject to review on
appeal for abuse of discretion.  State v. Dixon, 206
S.W.3d 587, 590 (Tex.Crim.App. 2006). 
The trial court's ruling will be upheld if it is reasonably supported by
the record and is correct under any theory of law applicable to the case.  Amador
v. State, 275 S.W.3d 872, 878-79 (Tex.Crim.App. 2009) (citing Ramos v. State, 245 S.W.3d 410, 417-18
(Tex.Crim.App. 2008)).  The trial court
is the sole fact finder at a suppression hearing and it may believe or
disbelieve all or any part of a witness's testimony.  State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).  Moreover, at a suppression hearing, the trial
court, like any fact finder, may make reasonable inferences from the evidence
presented.  State v. Garcia-Cantu, 253 S.W.3d 236,
241 (Tex.Crim.App. 2008).

            When
reviewing a decision by a judge or magistrate to issue a search warrant, we
apply the deferential standard of review articulated by the United States
Supreme Court in Illinois v. Gates,
462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). See Rodriguez v. State, 232 S.W.2d 55, 61
(Tex.Crim.App. 2007).  That is, we uphold
the probable cause determination "so long as the magistrate had a substantial
basis for . . . conclud[ing] that a search would uncover evidence of
wrongdoing."  Gates, 462 U.S. at 236.  See Swearingen v. State, 143 S.W.3d 808,
810 (Tex.Crim.App. 2004).

            Finally,
when reviewing the trial court's ruling on a motion to suppress when the trial
court made explicit fact findings, as here, we determine whether the evidence,
when viewed in a light most favorable to the trial court's ruling, supports
those fact findings.  State v. Kelly, 204 S.W.3d 808, 818
(Tex.Crim.App. 2006).  We then
review the trial court's legal ruling de
novo unless its explicit fact findings that are supported by the record are
also dispositive of the legal ruling.  Id. at 819.  

Detention and Investigation

            There are three distinct categories
of interactions between police officers and citizens:  encounters, investigative detentions, and
arrests.  Partee v. Tex. Dep't. of Public Safety,
249 S.W.3d 495, 500 (Tex.App.--Amarillo 2007, no pet.) (citing
State v. Perez, 85 S.W.3d 817, 819
(Tex.Crim.App. 2002)). Encounters occur when police officers approach an
individual in public to ask questions, and do not require any justification
whatsoever on the part of the officer.  Harper v. State, 217
S.W.3d 672, 674 (Tex.App.--Amarillo 2007, no pet.).  Police officers do not violate the Fourth
Amendment by merely approaching an individual in a public place, by asking him
if he is willing to answer some questions, by putting questions to him if the
person is willing to listen, or by offering in evidence in a criminal
prosecution his voluntary answers to such questions.  Perez,
85 S.W.3d at 819.

            An
investigative detention occurs when a police officer detains a person
reasonably suspected of criminal activity to determine his identity or
momentarily maintain the status quo
while seeking additional information.  Hoag v. State, 728 S.W.2d
375, 380 (Tex.Crim.App. 1987).  A
law enforcement officer need not have probable cause to detain an individual
for investigative purposes.  See Hall v. State, 74
S.W.3d 521, 525 (Tex.App.--Amarillo 2002, no pet.).  Rather, the officer may conduct a temporary
lawful detention when he has a reasonable suspicion to believe a person is
violating the law.  Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005).

 
          Reasonable suspicion
exists if the officer has specific, articulable facts that, when combined with
rational inferences from those facts, would lead him to reasonably conclude
that a particular person actually is, has been, or soon will be engaged in a criminal
activity.  Castro v. State, 227 S.W.3d 737, 741
(Tex.Crim.App. 2007); Garcia v. State,
43 S.W.3d 527, 530 (Tex.Crim.App. 2001). 
The acts or circumstances need not be criminal in themselves to create
reasonable suspicion.  Woods v. State, 956 S.W.2d 33, 38
(Tex.Crim.App. 1997).  Thus, we
examine the totality of the circumstances to determine whether Appellants detention
and the subsequent investigation were reasonable and justified.  See
Curtis v. State, 238 S.W.3d 376, 381 (Tex.Crim.App. 2007); Castro, 227 S.W.3d at 741.

            After
observing Appellant's pickup come to a complete stop in the middle of the
roadway, Corporal McGrail approached the pickup.  When he looked inside, he observed Appellant
in the driver's seat, unconscious with his head slumped back on the
headrest.  Appellant had an open can of
beer on his lap and there was an open cardboard container containing eleven
beers in the passenger-side floorboard. 
The pickup was in "Drive," Appellant's foot was on the brake
and he was unresponsive.  Corporal
McGrail placed the pickup in "Park" and turned off the ignition.  Up to this point, Corporal McGrail was
engaged in an encounter.  See Harper, 217 S.W.3d at 674-75 (collected
cases cited therein). 

            When
Corporal McGrail gave Appellant several verbal commands and grabbed his wrist,
the encounter became an investigative detention.  At this point, Corporal McGrail had specific
articulable facts which, when combined with rational inferences therefrom,
allowed him to reasonably suspect Appellant had been, and was, operating a
motor vehicle in a public place while intoxicated, i.e., Appellant's truck was
running while parked in the middle of the roadway obstructing traffic with his
foot on the brake; he was unconscious and unresponsive with an open can of beer
in his lap; an open twelve-pack of beer was on the passenger-side floorboard;
and a moderate to heavy odor of alcohol emanated from his person and the
interior of the pickup.[3]  Accordingly, Appellant's initial detention
and the officer's subsequent DWI investigation were reasonable and
justified.  See Partee, 249 S.W.3d at 501.  Appellant's first point of error is
overruled.

Search Warrant

            Generally, taking a blood sample is a
search and seizure within the meaning of the Fourth Amendment to the United States Constitution; Schmerber v. California, 384 U.S. 757,
767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and Article 1, Section 9 of the Texas Constitution.  Escamilla v. State, 556 S.W.2d 796, 799 (Tex.Crim.App. 1977).    If a person refuses to consent to the
taking of a blood sample, the police may obtain a defendant's blood for DWI
investigation through a search warrant.  Beeman v. State, 86
S.W.3d 613, 616 (Tex.Crim.App. 2002); Muniz
v. State, 264 S.W.3d 392, 396 (Tex.App.--Houston [1st Dist.] 2008, no pet.).  See Tex. Code Crim. Proc. Ann. art. 18.10(j)
(West Supp. 2010).  

            A search warrant may not issue unless
it is based on probable cause as determined within the four corners of a sworn
affidavit.  Tex. Code
Crim. Proc. Ann. art. 18.01(b) (West Supp. 2010) ("A sworn
affidavit . . . establishing probable cause shall be filed in every instance in
which a search warrant is requested.") 
See Jones v. State, 833 S.W.2d
118, 123 (Tex.Crim.App. 1992), cert.
denied, 507 U.S. 921, 113 S.Ct. 1285, 122 L.E.2d 678 (1993).  "Probable cause exists when, under the
totality of circumstances, there is a 'fair probability' that contraband or
evidence of a crime will be found at a specified location."  Rodriguez v. State, 232 S.W.3d 55, 60 (Tex.Crim.App. 2007).  In making our evaluation, we focus on the
combined force of the facts that are in the affidavit coupled with inferences
from those facts, to establish whether there is a "fair probability"
that evidence of a particular crime will likely be found; id., while affording the initial judicial decision to issue the
search warrant great deference.  Davis v. State, 144 S.W.3d 192, 197
(Tex.App.--Fort Worth 2004, pet. ref'd). 


            "[P]urely
technical discrepancies in dates or times do not automatically vitiate the
validity of search or arrest warrants." 
Green v. State,
799 S.W.2d 756, 759 (Tex.Crim.App. 1990).  The two objectives of the law concerning
search warrants are to ensure there is adequate probable cause to search, and
to prevent a mistaken execution against an innocent third party.  Id.  These objectives are not furthered by rigid
application of the rules concerning search warrants; id., and parol evidence, in the form of explanatory testimony, may
be used to cure technical defects.  Id. at 760.  

            Here,
Corporal McGrail's isolated errors in drafting the affidavit by failing to
delete a single date and name from his template may be classified as either
clerical or typographical.  Throughout
the remainder of the affidavit, Appellant's legal name and the correct date were
used.  We hold that the trial court
properly considered Corporal McGrail's testimony explaining why the conflicting
date and name were clerical or typographical errors and that the evidence,
viewed in a light most favorable to the trial court's fact findings, supports
the trial court's determination that these isolated errors were clerical errors
made by Corporal McGrail in completing his paperwork.  See Kelly
v. State, 204 S.W.3d 808, 818-19 (Tex.Crim.App. 2006); Green, 799 S.W.2d at 760. 
Because these clerical errors are not the type of error that would
invalidate an otherwise valid search warrant, we find that the trial court did
not err by denying Appellant's motion to suppress.[4]

            Neither
did the trial court err in denying Appellant's motion to suppress because the affidavit
stated that "Salzido was asked to perform standard field sobriety
drills."  At the suppression
hearing, Officer Jimenez testified that he asked Appellant to perform the
standard field sobriety drills, i.e., horizontal gaze nystagmus, walk and turn,
and one-legged stand drills.  However,
because Appellant told him he had back issues, Officer Jimenez first performed
the horizontal gaze nystagmus drill and then decided to perform the following
non-standardized drills -- nose-touch, counting and alphabet drills.  Officer Jimenez testified Appellant exhibited
extreme nystagmus and could not perform the other drills, i.e., as the
affidavit stated, "Salzido failed each of the drills" and, "[i]n
addition, failed the Nystagmus drill." 

            Further,
although the affidavit appears to indicate that Appellant was asked to perform
standard field sobriety drills and failed only "standard" drills
rather than a combination of "standard" and "non-standard"
drills, there was no evidence presented at the suppression hearing to indicate
that failing "standard" drills as opposed to "non-standard"
drills was any more or less indicative of Appellant's intoxicated condition.[5]  In fact, even without reference to the
drills, there remained sufficient evidence in the affidavit to support a
finding of probable cause to believe Appellant was operating a motor vehicle in
a public place while intoxicated.  The
affidavit stated that Appellant's pickup came to a complete stop in the middle
of the roadway with Appellant inside slumped back in the driver's seat with his
head tilted back over the headrest, the engine running, the ignition on, the
transmission in "Drive," his foot on the brake and a partially
consumed can of beer in his lap while his right hand was on the steering
wheel.  Further, it states there was an
open twelve-pack of beer on the floorboard and, when Appellant exited the
vehicle, his speech was heavy and slurred, his eyes bloodshot and watery, he
had difficulty maintaining his balance and had an alcoholic odor about his
breath and body.  Accordingly, we find,
under the totality of the circumstances, that the trial court did not abuse its
discretion in finding the affidavit established a "fair probability"
that evidence of intoxication would likely be found if Appellant's blood were
tested.  Appellant's second point of
error is overruled.

Conclusion

            The trial
courts judgment is affirmed.   

 

                                                                                                Patrick
A. Pirtle

                                                                                                     
Justice  

Do not publish.











[1]See Tex. Penal
Code Ann. §§ 49.04(a), 49.09(b)(2) (West 2003).  





[2]See Tex. Penal
Code Ann. § 12.42(d) (West Supp. 2010).





[3]Moreover, after looking in the pickup
and observing Appellant with an open can of beer, there was probable cause to
arrest him for violating the open container law.  A person commits an offense if the person
knowingly possesses an open container in a passenger area of a motor vehicle
that is located on a public highway, regardless of whether the vehicle is being
operated, or is stopped or parked.  Tex. Penal Code Ann. § 49.031(b) (West 2003).  An "open container" is defined as
"a bottle, can, or other receptacle that contains any amount of alcoholic
beverage that is open"; Id. at
49.031(a)(1), and "passenger area of a motor
vehicle" is defined as "the area of the motor vehicle designed for
the seating of the operator and passengers of the vehicle."  Id. at § 49.031(2).





[4]See Rougeau v. State, 738 S.W.2d 651,
663 (Tex.Crim.App. 1987) (upholding warrant because evidence showed affidavit
dated January 6, 1977, instead of January 6, 1978, was clearly a typographical
error), cert. denied, 485 U.S. 1029,
108 S.Ct. 1586, 99 L.Ed.2d 901 (1988), overruled
on other grounds by Harris v. State, 784 S.W.2d 5, 19 (Tex.Crim.App. 1989);
Lyons v. State, 503 S.W.2d 254, 256
(Tex.Crim.App. 1973) (upholding warrant when evidence was introduced to show
that the police officer mistakenly typed "March" instead of
"July" on the affidavit); Martinez
v. State, 162 Tex. Crim. 356, 285 S.W.2d 221, 222 (1955) (upholding warrant
when testimony was offered that "December" was mistakenly written on
warrant affidavit instead of "January").





[5]Corporal McGrail testified the
non-standard drills were alternatives to the standard drills.