**Norma Jean OWEN, Individually and as Executrix of the Estate of Chad Barrett Owen, Plaintiffs–Proponents–Appellees,**

**v.**

**Peggy Pope STANLEY, Sherry Pope Bray, and Kimberly Pope, a minor, by her mother, Delphine Bailey Pope, Defendants–Contestants–Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 23, 1987.

Application for Permission to Appeal Denied by Supreme Court Nov. 23, 1987.

---

Roger T. May, Nashville, for plaintiffs-proponents-appellees.

Tyree B. Harris, Harris, Robinson & Aden, Nashville, for defendants-contestants-appellants.

## OPINION

KOCH, Judge.

This appeal involves an intrafamily dispute concerning the validity of Cecil Gilbert Pope's 1982 will. The daughters of Mr. Pope's son contested their grandfather's will when their aunt, as executrix, filed it in the Probate Court for Davidson County. The contest was transferred to the Circuit Court for Davidson County and was dismissed when the trial court granted the executrix's motion for summary judgment. The trial court also ordered the contestants to pay the executrix $9,501.24 to defray the expenses she had incurred in defending the will. The contestants have appealed. They insist that the trial court erred by granting the executrix's motion for summary judgment and by awarding a judgment to the executrix for her legal expenses. We have determined that granting a summary judgment was proper in this case. However, we have determined that the trial court exceeded its authority by requiring the contestants to pay the executrix's legal expenses.

### I.

Cecil Gilbert Pope was seventy-seven years old when he died on October 16, 1984. He had retired from the DuPont plant in Nashville approximately ten years before his death and had lived alone since his wife died in 1981. Despite some deterioration in his hearing and sight, Mr. Pope was able to carry on his own business, to drive his car, to fish, and to pursue his other hobbies. He also took care of his yard as well as a neighbor's yard. A lawyer who had represented him since 1981 remembered Mr. Pope as a person who "was anything but easily swayed."

Mr. Pope had two children. The older was Kenneth Gilbert Pope; the younger was Norma Jean Owen. Kenneth Pope married Delphine Bailey Pope in 1954. The couple has three daughters. Norma Jean Owen married James Howard Owen. They have one son.

Mr. Pope executed a will in October, 1981 leaving a twelve-gauge shotgun to his grandson and fifty dollars to each of his granddaughters. He left the remainder of his estate, which exceeded $170,000, to his son and daughter in equal proportions. He told his son and daughter about the contents of this will.

Mr. Pope and his daughter did not get along very well with his son's family. These problems came to a head in June, 1982 when Kenneth Pope was admitted to the hospital suffering with heart problems. His wife, Delphine Pope, was very protective of her husband because he was undergoing tests. She telephoned Mr. Pope on June 11, 1982 and asked him not to encourage members of his family to visit his son. This call upset Mr. Pope. One of Mr. Pope's granddaughters had a similar heated telephone conversation with Mrs. Owen later the same day.

Kenneth Pope underwent surgery on June 18, 1982. It did not go well, and his family was informed that his condition was serious and deteriorating. This news upset and concerned the entire family. Mr. Pope also continued to be upset about the way his son's family was treating him. He asked his daughter to make an appointment for him with his lawyer and told her that he intended to change his will so that his daughter-in-law and his granddaughters would not share in his estate if his son died. He also told his daughter that he

intended to name her as the executrix of his estate to make sure that his daughter-in-law could not control any of his assets after his death.

Mrs. Owen made the appointment for her father. She drove her father to his lawyer's office and remained there while he explained his intentions to his lawyer. She took no part in the conversation and did not attempt to influence her father in any way. Mr. Pope told his lawyer that he wished to change the 1981 will to exclude his son from any inheritance. He explained that he thought his daughter-in-law and granddaughters had ignored him and treated him badly. His lawyer warned him that disinheriting his son and his son's family would result in a will contest and urged Mr. Pope to leave each of them ten thousand dollars. Mr. Pope refused, insisting that he would leave each of them one dollar. After a lengthy bargaining process, Mr. Pope's lawyer was able to convince him to leave each of his granddaughters fifty dollars.

Mrs. Owen drove her father back to his lawyer's office on June 29, 1982 where he executed his new will in the presence of two of his lawyer's associates. The new will contained the same gifts to Mr. Pope's grandchildren that the 1981 will contained. However, it left the rest of Mr. Pope's estate to his daughter to the exclusion of his son. The will also named Mr. Pope's daughter as his executrix.

Mr. Pope tried to visit his son shortly after he signed his new will. He was standing in the doorway of his son's hospital room when one of his granddaughters brushed past him to talk with her mother who was at her husband's bedside. Mr. Pope put his hand on his granddaughter's shoulder and tried to talk to her. However, she pushed his hand away and entered the room without speaking to him. Mr. Pope was very upset by this incident and left the hospital without speaking to any member of his son's family.

Kenneth Pope died on June 30, 1982. Mr. Pope attended the funeral but did not speak with his son's family.

Mr. Pope's last meeting with his son's family occurred in August, 1982 when his daughter-in-law came to his home to obtain his endorsement on an insurance check. She recalled that Mr. Pope appeared to be functioning normally when he signed the check. Mr. Pope never contacted his son's family again, and they never contacted him. One of his granddaughters was married several months later but decided not to invite her grandfather after her mother refused to attend the ceremony if Mr. Pope came.

Mr. Pope died on October 16, 1984. Mrs. Owen, acting as executrix, filed a petition to probate the 1982 will. Mr. Pope's granddaughters filed a petition to contest the will on November 28, 1984 alleging that their grandfather did not have the mental capacity to execute the 1982 will and that this will was the result of Mrs. Owen's undue influence. Mrs. Owen filed an answer and counterclaim denying these allegations and seeking damages for the filing of the will contest. Mrs. Pope's daughter-in-law was later made a party contestant.

The parties deposed Mr. Pope's daughter, his daughter-in-law and three granddaughters, the lawyer who had drafted both his 1981 and 1982 wills, and the two lawyers who witnessed the execution of the 1982 will. Relying upon these depositions, Mrs. Owen filed a motion for summary judgment seeking to dispose of the will contest case. The trial court granted the motion on the basis that Mrs. Owen had acted only as a messenger between her father and his lawyer. Later, in response to Mrs. Owen's request, the trial court also ordered the contestants to pay Mrs. Owen $9,501.24 to defray the expenses incurred in defending the will contest and in maintaining Mr. Pope's house while the contest was pending.

## II.

### The Availability of a Summary Judgment in a Will Contest Proceeding

The contestants insist that a Tenn.Code Ann. § 32–4–101 will contest proceeding cannot be disposed of by a Tenn.R.Civ.P. 56 summary judgment. They argue that de-

ciding a will contest on affidavits, depositions, answers to interrogatories or requests for admissions is contrary to the requirement in Tenn.Code Ann. § 32–2–104(a) that a will's proponents must prove the execution of the contested will by presenting the live testimony of the available attesting witnesses. We do not agree.

Summary judgments are intended to provide a quick, inexpensive means to conclude cases that can be decided on legal issues alone. *Brookins v. The Round Table, Inc.,* 624 S.W.2d 547, 550 (Tenn.1981); *Ferguson v. Tomerlin,* 656 S.W.2d 378, 382 (Tenn.Ct.App.1983). In the absence of a contrary statute or court rule, Tenn.R.Civ. P. 1 makes it clear that summary judgments are available in all civil cases filed in the circuit or chancery courts. Accordingly, this Court has upheld the use of a summary judgment in a will contest case against the claim that the summary judgment infringed on the contestant's right to a jury trial. *Union Planters National Bank v. Inman,* 588 S.W.2d 757, 760 (Tenn. Ct.App.1979).[1]

It is unnecessary, in every instance, for the proponent to offer the live testimony of the available attesting witnesses. This Court has held that Tenn.Code Ann. § 32–2–104(a) is satisfied if the testimony of the attesting witnesses is preserved by deposition after the contestants have been given the opportunity to cross examine. *Swindoll v. Jones,* 41 Tenn.App. 89, 109–10, 292 S.W.2d 531, 541 (1954).

Tenn.Code Ann. § 32–2–104(b) authorizes the trial court, in its discretion, to accept and use an attesting witness' deposition in lieu of live testimony if it determines that the witness is "unable to testify in person." Witness unavailability is for the trial court to decide, and its determination will not be set aside when the contestants have acquiesced in the proof concerning the manner in which the will was executed. *Lyman v. American National*

*Bank & Trust Co.,* 48 Tenn.App. 328, 333, 346 S.W.2d 289, 291 (1960).

It is clear that the contestants acquiesced in the proof concerning the execution of Mr. Pope's will. The two persons who witnessed the execution of the 1982 will were made available to the contestants and were deposed. Both witnesses identified Mr. Pope's will and their signature on the will. At the conclusion of one witness' testimony, counsel for the contestants announced:

> Let me say that I know Roy Miles, and if you get into the physical execution of whether or not they are in the presence of each other and he was there and they signed his request and all that, we don't raise any question about that or I wouldn't have done it otherwise.

Following the second witness' testimony, counsel stated again:

> And again, I say I make no question about Mr. Colbert and Mr. Miles getting this done physically and in proper manner; that everybody was present and the signing was in the presence.

In light of these concessions, we find that the contestants' challenge to the sufficiency of the proof concerning the manner in which the will was executed to be without merit.

### III.

### The Summary Judgment in this Case

The contestants next assert that even if a summary judgment is available in a will contest case, the trial court should not have granted one in this case because conflicting inferences can be drawn from the undisputed facts. They also insist that the trial court erred when it determined that Norma Jean Owen was merely acting as a messenger between her father and his lawyer during the preparation of Mr. Pope's second will. While we disagree with the trial court's finding that Mrs.

---

1. Further, in *Carty v. Patton,* Knox Law (Tenn. Ct.App. filed May 17, 1985), this Court held that using the attesting witnesses' depositions to support a motion for summary judgment was proper. However, Judge Franks held that the summary judgment should not have been granted because the contestants had introduced evidence creating a factual dispute concerning the genuineness of the testator's signature.

Owen did not take an active role in the preparation of her father's second will, we have determined that a summary judgment was proper.[2]

■ A motion for summary judgment goes to the merits of a case and should not be ignored or treated lightly. *Fowler v. Happy Goodman Family,* 575 S.W.2d 496, 498 (Tenn.1978); *Ferguson v. Tomerlin,* 656 S.W.2d 378, 382 (Tenn.Ct.App.1983). Thus, Tenn.R.Civ.P. 56.05 warns the opponent of a summary judgment motion not to "rest upon the mere allegations or denials of his pleadings." When faced with a motion for summary judgment, a party should respond by affidavit or by otherwise setting forth facts showing that there is a genuine issue of fact.

■ A motion for summary judgment can put the plaintiff's case to the test. After a plaintiff has been given a reasonable opportunity to substantiate its claims, a summary judgment may be entered if the plaintiff has failed to establish an essential element of his case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Moman v. Walden,* 719 S.W.2d 531, 533 (Tenn. Ct.App.1986).

Since the proponents of Mr. Pope's will proved that it was properly executed, the burden shifted to the contestants to prove their claims that Mr. Pope lacked the mental capacity to execute a will and that he was unduly influenced by Mrs. Owen. *In re Estate of Elam,* 738 S.W.2d 169, 172 (Tenn.1987); *Taliaferro v. Green,* 622 S.W. 2d 829, 835 (Tenn.Ct.App.1981). The contestants came forward with no proof on either the undue influence or the lack of testamentary capacity issues. Each, in turn, conceded that they had no factual basis for their claims other than their as-

sertion that Mr. Pope was upset about his son's illness and would not have disinherited his dying son had it not been for his daughter's influence. In their brief filed in this Court, they also insist that Mrs. Owne's testimony concerning her role in assisting her father in changing his will is sufficient to create a jury question on the issue of undue influence. We disagree.

■ This Court has succinctly described the contestant's burden of proof as follows:

Where, however, the contestant shows the existence of suspicious circumstances such as a confidential relationship *in combination with* the beneficiary's involvement in procuring the will, or *in combination with* impairment of the testator's mental capacity, there arises a presumption of fraud or undue influence which the proponent of the will must overcome by a preponderance of the evidence.

*Taliaferro v. Green,* 622 S.W.2d 829, 835–36 (Tenn.Ct.App.1981) (emphasis added). Thus, there are two essential elements to the proponents' case. First, suspicious circumstances such as a confidential relationship between the testator and the recipient of the gift must exist. Second, there must be proof that the testator was in a diminished physical or mental condition or that the recipient of the gift was actively involved in the preparation of the will.

The contestants have conceded that there is no proof that Mr. Pope was in a physically or mentally impaired condition.[3] Therefore, in order to stave off the summary judgment motion, they must show that there is material evidence that Mrs. Owen had a confidential relationship with her father and that she was actively involved in procuring his 1982 will. Contrary to the trial court's conclusion, there is evidence from which a jury could conclude that Mrs. Owen was actively involved in the prepara-

---

**2.** This Court can affirm a trial court's judgment if it reaches the correct result even though it is based upon different, incomplete or erroneous grounds. *Hopkins v. Hopkins,* 572 S.W.2d 639, 641 (Tenn.1978); *Bohlinger v. American Credit Co.,* 594 S.W.2d 710, 713 (Tenn.Ct.App.1979).

**3.** Counsel for the contestants stated during oral argument that he included the impaired capaci-

ty claim as part of his undue influence claim. He conceded that he had "not made out a case for straight mental capacity." This concession is binding on the contestants. *Garland v. Seaboard Coastline R.R. Co.,* 658 S.W.2d 528, 531 (Tenn.1983); *State ex rel. Shriver v. Stoker,* 640 S.W.2d 549, 550 n. 1 (Tenn.1982); *Hammon v. Miller,* 13 Tenn.App. 458, 462 (1931).

tion of her father's will. Her role was clearly more than that of a mere messenger. However, the contestants have failed to offer any evidence of a confidential relationship between Mrs. Owen and her father at the time he changed his will.

The parent-child relationship is insufficient, by itself, to create a confidential relationship. *Kelly v. Allen*, 558 S.W. 2d 845, 847 (Tenn.1977); *Harper v. Watkins*, 670 S.W.2d 611, 628 (Tenn.Ct.App. 1983). In order for a confidential relationship to exist, there must be proof that one of the parties was in a position to exercise dominion, control, or influence over the other. *Turner v. Leathers*, 191 Tenn. 292, 298, 232 S.W.2d 269, 271 (1950); *Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn. Ct.App.1973). The Tennessee Supreme Court has held that

> [i]n order for such a presumption to arise there must be a showing that there were present the elements of dominion and control by the stronger over the weaker, or there must be a showing of senility or physical and mental deterioration of the donor or that fraud or duress was involved, or other conditions which would tend to establish that the free agency of the donor was destroyed and the will of the donee was substituted therefor.

*Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977).

The contestants in this case have offered no proof of Mrs. Owen's dominion over her father or of Mr. Pope's senility or of any other type of fraud or duress. Mr. Pope's concern over his son's medical condition does not rise to the level of the type of duress or mental deterioration that will support an inference that a confidential relationship existed. If anything, his realization of the consequences of his son's condition reinforces the unrebutted testimony of his lawyer that Mr. Pope knew exactly what he was doing and that he was determined to make sure that his estate did not fall into the hands of his son's family.

## IV.

### The Taxation of the Costs

The last three issues raised by the contestants relate to the trial court's taxation of the costs. In addition to the normal costs, the trial court awarded Mrs. Owen $9,501.24 to defray the costs she incurred in defending the will contest. These costs included attorneys fees, discovery expenses, and the cost of maintaining Mr. Pope's house while the will contest was pending.

Awarding costs is discretionary with the trial court. *Lewis v. Bowers*, 216 Tenn. 414, 423, 392 S.W.2d 819, 823 (1965); *Goodall v. Crawford*, 611 S.W.2d 602, 607 (Tenn.Ct.App.1980). We find that the trial court's decision in this case must be set aside because it exceeded its authority to award costs.

At common law, a party had no right to the payment of its costs or its attorneys fees. *Mooneys v. State*, 10 Tenn. (2 Yerg.) 578, 579 (1931); *McCormic v. Smith*, 668 S.W.2d 304, 306 (Tenn.Ct. App.1984). Thus, a court's power to determine what items of expense will be considered costs and whether or not to award them to a litigant depends upon legislative enactment. *Railroad v. Boswell*, 104 Tenn. 529, 532, 58 S.W. 117, 118 (1900); *Person v. Fletcher*, 582 S.W.2d 765, 767 (Tenn.Ct.App.1979).

There is no statute in this State requiring the losing party to pay the prevailing party's attorneys fees as part of the costs. Thus, in the absence of such a statute, or a contractual obligation or other equitable ground, a trial court cannot compel the losing party to pay the prevailing party's attorneys fees. *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 607 (Tenn.1979); *State ex rel. Shelby County Election Commission v. Shelby County Board of Commissioners*, 656 S.W.2d 9 (Tenn.Ct. App.1983); *Person v. Fletcher*, 582 S.W.2d 765, 767 (Tenn.Ct.App.1979). To do so without statutory authority would be against public policy. *John J. Heirigs Construction Co. v. Exide*, 709 S.W.2d 604, 609 (Tenn.Ct.App.1986); *Raskind v. Raskind*, 45 Tenn.App. 583, 601, 325 S.W. 2d 617, 625 (1959).

Neither Tenn.Code Ann. § 20–12–119 nor Tenn.R.Civ.P. 54 permit trial courts to tax attorneys fees or other similar items as costs. In 1986, the General Assembly considered but rejected an amendment to Tenn.Code Ann. § 20–12–119 that would have broadened the courts' discretion in this area.[4] However, even if this bill had been enacted, it would not have authorized taxing attorneys fees as costs. No other independent equitable ground exists that supports the trial court's award of costs in this case. While an executor may look to the estate to pay its legal expenses incurred in defending or preserving the estate, *In re Taylor's Estate*, 54 Tenn.App. 173, 178, 388 S.W.2d 657, 660 (1963), it is a far different matter to require the losing contestants to pay the legal expenses and other costs the proponent incurred in defending the will. Thus, the trial court's award of $9,501.24 in costs must be vacated.

### V.

For the reasons stated herein, the trial court's judgment granting Mrs. Owen's motion for summary judgment is affirmed. Its award of $9,501.24 is vacated. The case is remanded to the trial court for any further necessary proceedings. The costs of this appeal are taxed against the contestants of Mr. Pope's will and their surety for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.